Good morning, and welcome to the Sandra Day O'Connor Courthouse for these arguments set for today. It's a pleasure to be here. As you know, we don't always get to sit in Phoenix, and I'm just delighted to be here. And I know that Judge Hawkins and I are just equally delighted to welcome Judge Johnstone, our newest colleague on the Ninth Circuit Court of Appeals, who's here from Missoula, Montana. And despite our cooler temperatures, he says it's a lot better than Missoula, Montana. So we're ready to proceed with the oral argument calendar set for today. The first case on our calendar is Clinton Mark Lewis v. United States of America. If the lawyers are ready, you may come forward. Good morning, Your Honors. May it please the Court, Randy McDonald for the appellant, Clinton Lewis. I'd like to reserve a couple of minutes at the end for rebuttal, and I'll watch my time. The government's case here involved the presentation of two chains of evidence. One chain involved the thumbnail images that were found on Clinton Lewis's computer, and which I think undisputably showed child pornography. But it is disputed whether Clinton could have accessed those images. And so the government's case additionally relied on another chain of evidence demonstrating that the user of the computer had utilized certain video software to download certain files and view those files. But that alone does not demonstrate that any of the files that were downloaded and viewed were of child pornography. So none of those files continue to exist. Counsel, did anyone else have access to the two computers? I think there was a stipulation at trial that nobody else had access to the computers. But I believe it was U.S. v. Moreland that said exclusive access of a computer where there are child pornography is not enough. Especially like, as this court said in Flyer, where those images are contained in a cache or some other kind of unallocated space where the user of the computer would not necessarily know that those files existed. And in fact, there was testimony here by the government's expert that Lewis could not have access to those files and could not have manipulated those files without certain software that he did not have. But Mr. McDonough, why wouldn't the evidence be sufficient to establish the government's theory that he just deleted the files given the other software available on the computer? So there is also, I want to say it's Kuczynski that talks about, this court said, that deletion of those files by itself is not evidence of possession of the files. That just the deletion of the files does not demonstrate that he possessed the images. So the images that we have are just the thumbnail images and those are the charged images. So the government argues that those images are the ones that Clinton Lewis possessed. Now, as the government points out, the statute does permit charges for accessing child pornography, which is why I think they introduced that evidence of the ShareX and RVC database that somebody went out and downloaded files that ended up in this ShareX file and that these thumbnail images were derived from also images in this ShareX file. But there is no way to connect the thumbnail images to the files that were downloaded. They are not a one-to-one comparison. The names are different. Well, you talk about two different threads of evidence here, but why not for the sufficiency argument at least are we able to weave those threads together into enough evidence to sustain the conviction? And so that – these two threads rely on this expert testimony that basically says here's this folder and the thumbnails come from the folder and the downloads went into the folder. But what I think that requires is a number of inferences. We don't know what else was on the computer. The expert testified that everything else on the computer was wiped. So I don't think we know what was in that file to begin with. We know that ShareX downloaded files into that folder and we know that the thumbnails were created from that folder. But other than that, there is no way to look at a thumbnail that was collected from the computer and say this thumbnail came from this file that was downloaded by ShareX. I'm sorry. Go ahead and finish. And I think to knit the two threads of my argument together, it was that testimony about the connection between the two threads that was the subject of the late disclosure by the government and which required a continuance that the court did not grant. And so here I think because that testimony, even if this court were to find that the evidence was sufficient, it's that link which provides the critical piece of information that connects these two threads and it's that link that was the subject of the expert disclosure less than three weeks before trial. And so I think it's very clear that there was prejudice from the court's failure to grant that extension. Was his sixth motion for continuance? It was, but as the cases that I've cited have mentioned, this court shouldn't hold that against him when those continuances were for other purposes. And I acknowledge that the purpose of those continuances were to review the discovery because the discovery here was voluminous and very complicated. But it was not until three weeks before trial that this specific expert report, which indicated how the key witness in this case was going to testify and how he was going to make those connections. It was only at that point that that was known by the defense. They had all of the data, but they didn't know how the expert was going to tie all of that data together and unify these two threads of evidence we were talking about. Didn't they have an opportunity to ask in the time that they met along with the defendant's expert? And I think that the fact that defense counsel met with the government's expert for a great length of time and still was unable to understand that evidence demonstrates that a continuance was necessary. I think you're right that the government's expert met with defense counsel for several hours, walked through this testimony. And still defense counsel on the record said, I do not understand this. I don't know how these connections are being made. He needed a little bit more time to make those connections, to confer with his expert, to be able to properly cross-examine the expert. And there are cases which have said that the need to prepare for testimony is a purpose that the court should consider when granting those extensions of time. The district court, in denying the motion for continuance, did do a couple of things that were beneficial to the defense, correct? He excluded some demonstrative exhibits, which were in fact new. That's true. And he allowed your defense, your expert, to sit with you or with trial defense counsel at trial, correct? That's true. But I think the key here is that that new evidence, the expert report, necessarily tied these two threads together in a way that it was not clear how it would happen before. In other words, without that expert report, defense counsel had no idea how the expert was going to testify to connect these two disparate threads. And I think, and I'm sure the government would disagree here, but neither of those two threads by themselves would have been enough to convict the defendant. Because in the Share-X link, there was no evidence of child pornography. We don't know what those files were. In the thumbnail link, we don't know that he exercised dominion and control over those thumbnails. In fact, there was testimony that he could not have exercised dominion and control over the thumbnails. And so what was necessary was to show how these downloads and these thumbnails were linked, and that was exactly the subject of the expert opinion that was disclosed. You mentioned Kuczynski, the case. You think that's your best case for the sufficiency of the evidence? I think for the sufficiency evidence, Flyer is the best case. Oh, okay. In Kuczynski, which you just mentioned, that was a sentencing enhancement issue, not a determination of guilt. That's true. That's true. But the question was still— And there was no evidence there that the defendant was sophisticated or familiar with the computers. And here, I think has already been mentioned, stipulation that he was the only one, and it looked like he was, from what I was able to review, pretty familiar with how computers work. And the question of that familiarity with computers goes to the question of whether he knew about the files and could have possessed them. But here, even if he knew, I think Flyer said that for possession, you have to know about and be able to access the files. And the testimony is clear. He could not have accessed those thumbs.db files. And I have 30 seconds. I would like to reserve some time for rebuttal. All right. Good morning, Your Honors, and may it please the Court. My name is Ben Goldberg. I'm an AUSA here in Phoenix, and I'm here on behalf of the appellee, the United States. This Court should affirm Mr. Lewis's conviction and sentence. First, the District Court did not abuse its discretion when it denied Mr. Lewis's sixth motion for a continuance. The Court carefully considered the motion and then correctly determined that a continuance would not be proper. It looks like there was a lot of data here, and that's referred to data. What does that mean, or can you give us the best idea of what that data means? Because from what I understand of the appellant's argument is that 37 exhibits were identified two weeks before trial. And I'm trying to figure out, were those needles and haystacks, or were they very obvious? Sure. I think as to the data in general, Your Honor, certainly I would imagine there was a lot of data, even more than what the government presented as exhibits, because the FBI and its experts had to take the entire data of the computer and then focus in on the child pornography aspect of the case. That being said, it was and should have been very clear to Mr. Lewis and his defense team well before trial started where the case was going to go. Because you told him? For a number of reasons, Your Honor, including the fact that the government told him. So in those meetings that you had, because I think there were at least two meetings, did you identify those 37 exhibits as being the critical foundation for your evidence? So the government was not present at those meetings. Those meetings were between the FBI and the defense team, those initial two meetings between the defense team and the FBI. But you're pointing to those meetings as that's where he should have or could have identified. I'm just not sure how clear the government was in those two meetings, or if they were just saying, hey, here it is and we're here. Let us know what you want to know, I mean, just in terms of fundamental fairness. Sure, and I think that's one part of the complete story of where defense should have been on notice of not only the exhibits, but really the entire case in general. I think it starts going before that where Mr. Lewis had an interview with the FBI agent and a number of the programs that issue here, including Nightflower, the encrypted container, including ShareX, which has already been mentioned. Those were brought up during that interview. Now, would that one interview be enough notice for a trial, and would the government be able to meet its discovery obligations from that interview? Of course not. But then the government turned over all of the data at issue. It provided two forensic reports initially, in addition to the expert report that came later. Did those reports identify those 37 exhibits? Not the 37 exhibits in particular, Your Honor. Did it identify any of the 37 exhibits? Well, it didn't identify exhibits simply because the government hadn't prepared exhibits for trial yet, because at that point trial was a year and a half. But did it identify the information that were later in the exhibits? Yes, absolutely, because the exhibits were merely visual depictions of the data, and it wasn't just simply that the government said, here's a treasure trove of data, and now we're going to pick and choose what our exhibits are. So the government identified the significance of those exact images during those meetings? Well, I don't want to speak to those two initial meetings, but I can confidently say that the defense was provided information to allow them to hone in on the particular importance of those exhibits. The two weeks before? Before the two weeks before. Okay, and that's what I'm trying to figure out. Sure, and I think it really goes to the initial forensic reports, which showed, here's SHARE-X, the files are found in SHARE-X. Here's RVC recordings, the files are found in RVC recordings. Here are some other programs found on Mr. Lewis' desktop, like CCleaner or VeraCrypt, the same programs that were going to be brought out in those exhibits. Then the FBI made itself available for two meetings. I don't want to say necessarily what went on in those meetings, but I know the FBI was certainly available to answer any questions. Those two forensic reports had also been provided to allow the defense to hone in on what was important. Then the government did meet two weeks before trial with defense counsel to essentially say, here are courtesy copies of the exhibits. Those exhibits were not due until two days before trial, so this was really a courtesy meeting and a courtesy providing of the exhibits. And the government sat down and essentially said, here's the roadmap of our case. But I don't think the notice started the two weeks before trial at that meeting. I think defense certainly had time before then and certainly should have had an indication of what those exhibits would be. Mr. Goldberg, you talk about the exhibits as essentially trial exhibits. I guess I'd like to understand a little better in terms of sorting out this question of how much the defense was on notice of or not. What sort of visual transformation to the data did the exhibits perform? I mean, it's hard to assess without understanding. What kind of schematic, what were these exhibits? Sure. I think, for instance, one example would be the data at issue showed what the icons on Mr. Lewis' desktop were. This was important for the government because it showed some of the programs that the government expert later testified to at trial, like the ShareX program, like some of the cleaning software that Mr. Lewis had on his computer. The data clearly listed out what those programs were. It was very clear and should have been, especially to Mr. Lewis' expert who was assisting him, the programs that showed up on Mr. Lewis' desktop. What the government did, for instance, in its trial exhibit, instead of just showing a very large spreadsheet saying here are the different icons, it showed an image of Mr. Lewis' desktop the way we as normal users might see it. So while Mr. Lewis had the indication of these are all of the programs and icons that showed up on your desktop, the trial exhibit was a visual of that desktop showing the same. What about the others? The others would be, for instance, there was data showing how often ShareX was used. The trial exhibit for that was essentially a very long spreadsheet where the government expert went through line by line. Here are the times ShareX was used. Here are times certain things were created. That was actually most of the exhibits were these longer spreadsheets. It certainly narrowed the data from everything because there may have been some highlights on the exhibits showing ShareX or RBC recordings, but those were actually very similar, I think, to what the data probably looked like. Was the district court required to do anything more than it did in its findings with respect to the continuance for purposes of our review? It's a relatively short discussion of the factors. It was, but I don't think the district court needed to do anything more, Your Honor, for a couple of reasons. I think as this court has noted, it heard from the government that the exhibits at issue were not anything new, but simply those visual depictions of the data that Mr. Lewis had had for over a year and a half. It heard about the forensic reports as well as the expert report that Mr. Lewis had received. It asked Mr. Lewis' counsel, is there any issue with the timing of the disclosure, both of the expert or the expert's report? That was conceded that there were no disclosure issues when it came to timing for the expert and the report. The court asked about the qualifications of the expert who was assisting Mr. Lewis, and it heard about those meetings that the court had asked about with the FBI. I guess I'm just more focused on the significance of the data. I know they had access to all the data, but did they, were they, how much notice did they have of the significance of that particular data that you were going to be using? I think, Your Honor, it would have been more of a problem if the government had simply said, here is a hard drive with all of the data, and here's forensically how it looked. Good luck trying to prepare for trial. You'll get our exhibits as we get closer. But what the government instead did was, here's the data. Also, here are two different forensic reports that will help you hone in on the importance of the programs at issue here. Here's an interview with your client where the important programs are discussed. And then the government later provided an expert report, which again reiterated the importance of those programs, as well as the meeting that the government had a few weeks before trial. It's pretty clear from the interview with the FBI that this was a very sophisticated computer user, correct? That's correct, Your Honor. This was no surprise to anybody. It should not have been, Your Honor. In fact, at one point, didn't one of the agents say to the defense expert, if you want to know how this stuff works, ask your client? And the court actually did the same, Your Honor, at the final pretrial conference when the parties discussed the motion to continue. The court not only took notice of the defense expert who was assisting, but he also noted that in a sealed hearing right before that final pretrial conference, it was clear to the court, and it was very clear from the evidence, that Mr. Lewis himself was very computer literate, himself was a computer expert, and it should have been no surprise about which of these programs were going to be more important than some of the others. Can you talk about the sufficiency of the evidence here? Because it seems like these thumbnails were critical to your case, and I'm just trying to figure out if that alone is sufficient for the jury to have had a reasonable inference that he actually accessed or possessed. Of course, Your Honor. And I think I'd like to first just start out by differentiating this case from some of the cases cited by the defense, like Flyer, like Kuczynski, like some of the others cited in the defense brief. In those cases, the main issue is that the only evidence the government could point to were items found in the unallocated space on the computer. There simply wasn't any other evidence the government could point to other than the existence, and because of the existence, likely deletion of the files that were in unallocated space. I see that my time is out, Your Honor.  Please continue. Thank you. In this case, the thumbnails were not the only piece of evidence the government could point to, but they were actually the only piece of evidence that Mr. Lewis seems to have failed to delete when he shredded and completely cleaned his initial desktop computer. In this case, the government was able to first point to the underlying files of those thumbnails. It talked about how Mr. Lewis would access child pornography on the Internet, how he used specialized recording software to get those files onto his computer. It talked about how Mr. Lewis then viewed some of those files. We know from some of the data in the case that he was opening files with names suggesting child pornography. The defense had noted that in the ShareX folder, for instance, there was no evidence of child pornography, but the government expert testified that of the 77 thumbnails found in the ShareX directory on Mr. Lewis's computer, 75 depicted images of child pornography or child exploitation. Those were the underlying files. We then know that Mr. Lewis transferred some of these files to an encrypted container, that he then took that encrypted container to a laptop that he owned and viewed those files on the laptop, and then he completely erased and shredded as many files as he could, forgetting only the fact that he had those thumbnails. So while it may be that Mr. Lewis was unaware that the thumbnails themselves were housed in this thumbs.db directory, the government certainly provided sufficient evidence that he possessed and had dominion and control over those underlying files. I would also just add that the government also showed evidence that not only the underlying files were things that Mr. Lewis had possession of and dominion and control of, but the government expert testified that the thumbnails themselves would not have been created absent Mr. Lewis changing the settings on his computer, changing those settings to icon view, and the government expert testified as soon as he did that, the thumbnails would have started populating in the folder, meaning Mr. Lewis would have had to have seen some of those thumbnails once he changed those settings. I think at that moment, when he had those thumbnails there, as this court in ROM said, now he has the thumbnails in front of him. He has the chance to manipulate those, enlarge them, do whatever he wants to do with those thumbnails. So I think not only did the government show sufficient possession of the underlying files, but actually even of the thumbnails themselves. I see that I'm out of time. I just ask that this court affirm Mr. Lewis's conviction and sentence. Thank you very much. Thank you, Mr. Colburn. Good morning. I think one thing relating to the continuance that may be lost here is that there was an FBI expert who evaluated the computer initially and who gave some disclosures, the forensic disclosures that I think the government is talking about. That person was not the person who ultimately testified. The testifying expert was a different person. Because the first one died. That is correct. He was not available for trial. But I don't think the reasoning for why, I mean, we're not saying that he should have been. Of course. But the fact that this was a new expert who was evaluating the evidence for how he was going to testify I think is relevant. And as the government said, these exhibits were enormous spreadsheets with thousands of lines that were themselves an aggregation of data that had been presented. And I think it was just without those spreadsheets and pointing to the specific data that was going to be presented, I just don't think that there was a way for the defense to be capable. Correct me. But do you have to show at this point, you know, based on your issue regarding the continuance, that if you had been granted the continuance, the outcome would have been different? We have to show prejudice. And I think we can show prejudice by the fact that. But don't you have to show prejudice by showing that the outcome would have been different? I think the argument that the outcome is different is specifically because that link between the two threads of evidence that I spoke to was in the expert report that was disclosed three weeks before trial. And so what I would argue is that without being able to make that connection, the government would not have been able to prove its case, and that that evidence and how to properly rebut that evidence was only available to the defense three weeks before trial. I see that my time is up, and I. Thank you very much. Thank you. Mr. McDonald and Mr. Goble, thank you very much for your argument presentations here today. The case of Clinton Mark Lewis v. United States of America is now submitted.
judges: MURGUIA, HAWKINS, JOHNSTONE